FREEMAN R. COLMAN, Appellant, *v.* EDWIN R. SHATTUCK et al., Respondents.

A comptroller's deed on sale of land for unpaid taxes being made by statute (§ 65, chap. 427, Laws of 1855), presumptive evidence of the regularity of the preliminary proceedings, a party assailing it is bound to establish, by sufficient and satisfactory legal evidence, some irregularity or defect which vitiates it.

In an action to set aside such a deed, a highway tax was claimed to be defective because the notice to non-residents was not affixed by the overseer of highways to the outer door of the building where the last town meeting was held, as required by the statute (1 R. S., 509, § 34). The tax was laid seventeen years before the trial; the person who was overseer at the time testified that he did not remember whether or not he posted the notice; that he was overseer several years, and one year posted the notice at the town hall. It was also proved that search had been made in the town clerk's office, and in the office of the clerk of the board of supervisors, and the notice could not be found. The owner of the lot at the time testified that during the year he inquired and looked for the notice and failed to find it, or to learn that it had been posted. *Held*, that this evidence was not sufficient to overcome the presumptive evidence of regularity furnished by the deed, and the presumption that the

officer did his duty; and that a finding that the notice was posted was proper.

In one assessment roll, after the entry of assessments upon residents of the town, was entered the oath of the assessors in the form prescribed by the statute (§ 8, chap. 176, Laws of 1851), stating, among other things, that they had " set down in the foregoing assessment roll all the real estate situated in the town." Upon the other side of the same leaf was entered the assessments upon non-resident lands, including the land in question ; it was claimed that the non-resident part of the roll was not verified. *Held*, that as the statute simply required the oath to be written on the roll, in the absence of proof that the roll as made out and sworn to did not contain the non-resident assessments, it would not be presumed that the assessors swore falsely, but the presumption was that the verification was of the entire roll.

One roll was verified by but two of the assessors, and did not contain a certificate stating the name of the delinquent assessor, and the cause of the omission. *Held*, that the certificate to that effect required by the statute (1 R. S., 394, § 30) was not a portion of the official oath, but a separate and distinct statement, not required to be verified, and not forming a necessary part of the roll; that the two assessors had full power to act, and their oath was all that was required to complete the roll; and that therefore its validity was not affected by the absence of or an omission to make the certificate.

*Bellinger* v. *Gray* (51 N. Y., 610) distinguished.

The oath did not·have a venue, and it did not appear that the justice before whom it was verified was a justice of the peace of the town. *Held*, that the paper signed by the assessors was not technically an affidavit, but an oath in the form prescribed, and as there is nothing in the statute requiring a venue, the omission thereof was not a defect; and that in the absence of proof to the contrary, it was to be presumed that the oath was administered by a justice of the peace of the town.

The land was situated in the town of Portville, Cattaraugus county. It was described in the assessment roll of the town as follows: " P. Lot 54, town 1, range 3, acres 150." It was objected that the roll was defective in failing to designate, by its name, the tract in which the land was situated, as required by the statute (1 R. S., 391, § 12). *Held*, that the statute was complied with by giving the known name of the part of the tract which was subdivided into lots, and as the act creating the town of Portville (chap. 268, Laws of 1837) describes it as part of the Holland purchase, which tract is recognized in the public statutes of the State as divided into numbered ranges, townships and lots, the description fully carried out the spirit and intent of the act, and was sufficient.

It appeared that after the roll had been completed by the board of supervisors, and delivered to the supervisor of the town, the latter, after the board adjourned, took out the leaves upon which were entered the

non-resident lands and taxes, and inserted copies in their place. *Held*, that as the statute (1 R. S., 395, § 36) required the board to cause either the original roll or a copy to be delivered to the collector it was to be presumed that the roll was delivered to the supervisor with authority to copy the whole or such part thereof as should be necessary; and that it was no objection that a portion only was copied instead of the whole.

The collector, in making his returns, added five per cent. to the amount of the unpaid taxes. *Held*, no error; that the provision of the act of 1847 (§ 16, chap. 455, Laws of 1847), authorizing that addition applied as well to taxes on non-resident lands as to others; and that it was immaterial whether the per centage was made a separate item or added to the tax and the sum total returned.

In one instance the collector returned three cents too much, and in another four cents. *Held*, that the maxim *"de minimis non curat lex"* applied, and that the mistake did not vitiate the proceedings.

The certificates of the county treasurer, transmitted to the comptroller with the collector's accounts, were in the form required by the statute. (§ 4, chap. 427, Laws of 1855.) It was objected that another certificate was required by the statute to be made by the treasurer when he received the accounts, which should have been also transmitted. *Held*, that the transmittal of but the one certificate was required; also, that it contained in substance all that is required to be stated in the first certificate and was sufficient.

The proofs of publication of the notices required by statute (§ 34, chap. 427, Laws of 1855) to be published by the comptroller "for the space of ten weeks prior to the commencement of the sale," stated generally that they were so published without, in all cases, stating when the publication began and when it ended. It appeared that the publication ceased sometime prior to the sale. *Held*, sufficient; and that it was not necessary that the publication should be for the prescribed time *next* prior to the sale.

The comptroller is not required by the statute (§ 33, chap. 427, Laws of 1855) to advertise and sell immediately after the expiration of "two years from the first day of May following the year" in which an unpaid tax was assessed; but is vested with a discretion as to the time when he will perform that duty.

(Argued June 16, 1875; decided June 25, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendants, entered on a decision of the court at Special Term. (Reported below, 2 Hun, 497; 5 T. & C., 34.)

This action was brought to have a deed executed by the

State comptroller, upon a sale of certain premises for unpaid taxes, declared void, as a cloud on plaintiff's title, and to compel defendants to release, etc.

The premises in question are situated in the town of Portville, Cattaraugus county, being lot fifty-four, township one, third range of the Holland purchase.

The court found that plaintiff became vested with title to the lands by deed, on the 23d August, 1865. That said lands have always been unoccupied, vacant and wild, and the owner non-resident. That in May, 1856, said land, which was in road district number six of the town of Portville, was assessed as non-resident lands, in the same list with other non-resident lands, for five and one-half days' highway labor — at commutation rates, three dollars and forty-four cents — which list was annexed to a road warrant in the proper form and issued therewith, by the commissioners of highways, to the overseer of that district. That said assessment was never paid or worked out. That notice in writing was affixed, as required by the statute, by the overseer on the outer door of the house of Robert Galliland (the place where the last town meeting was held), containing a list of non-residents as far as their names were known and a description of the lands contained in his list, including that in question, together with number of days' labor assessed and specifications of times when and where it was to be performed, which was about twenty days subsequent to the posting; and said overseer, on or about October first of that year, made out and delivered to the supervisor of the town the list and certified affidavits required by law, which included the land in question, which was by said supervisor laid before the board of supervisors, who, at their annual meeting of that year, caused the amount of arrearages to be levied as required by law. That the board of supervisors of Cattaraugus county, in November, 1856, caused said land to be placed on the assessment roll of the town for that year, and for alleged arrearages for said highway labor, caused a tax to be levied upon and carried out against said land, of three dollars and

forty-four cents. That the said land was the same year placed on the assessment roll by the town assessors, and assessed as non-resident land. That Willis M. Howe, one of the assessors for that year, did not perform his duties, on account of sickness, and the other assessors did not in said roll, or with it, certify to the supervisors the said Howe as delinquent in that respect, or the fact or causes of his delinquency, and at said meeting of the board (in November, 1866), a tax of three dollars and thirty cents was levied and carried out against the said land, which said roll was made up, certified and warrant attached, as follows: The first twenty pages of the assessment roll contained the assessments against residents; the twenty-third page contained the oath of the two assessors, following the form given in the statute (§ 8, chap. 176, Laws of 1851). The twenty-fourth page, which was the second page of the same leaf, was headed as follows:

"List of lands belonging to non-residents in township number one, range three, formerly known as the Holland Land Company's land," and contained the following relating to the land in question: "Lot fifty-four; acres, 150; value of real estate, $450; total tax, three dollars and thirty cents." Next, after this, followed the warrant of the supervisors, and immediately thereafter a page headed "non-resident highway district, number six," followed by the following, relating to the said land: "P lot fifty-four; town one; range three; acres, 150; value of real estate, $750; total, three dollars and forty-four cents." That in the assessment roll of the town for 1858, the said land was again set down by the assessors, and valued as non-resident land, and that at the annual meeting of the board of supervisors of that year, a tax thereon was levied and carried out of eight dollars and forty-six cents. That after the adjournment of the board, the leaves containing the non-resident lands and taxes were taken out, and copies thereof, made by the supervisor, inserted in their place. That said land was included by the assessors in the non-resident part of the assessment roll for 1860, and a tax of eight dollars and sixteen cents levied and carried out

against the same by the board of supervisors at their meeting for that year, which assessment roll was made up, certified, and warrant attached, etc. That said land was in each of said years, in due time, returned by the collector to the county treasurer for unpaid taxes, which returns were in due time transmitted by the county treasurer to the comptroller. The returns stated the taxes as follows: For 1856, general tax, three dollars and forty-six cents, highway tax, three dollars and sixty-one cents; for 1858, "amount of tax including five per cent for fees, eight dollars and ninety-one cents;" for 1860, eight dollars and sixty-one cents. That, in November, 1866, the comptroller, pursuant to notices, sold said land to one P. J. Marsh, and on the 19th November, 1866, deeded the same, in pursuance of said sale, to said Marsh under whom defendants claim. That none of said taxes were ever paid, except by the comptroller's sale.

The court as conclusions of law, held in substance, that the comptroller's sale and deed divested plaintiff of title to the land in controversy. That he had no title or interest therein at the time of the commencement of this action, and that, therefore, the action could not be maintained.

Plaintiff excepted to the findings of fact, as to the posting of list and notice by the overseer of highways on the outer door of the house of Robert Galliland, and that he delivered list with affidavit to the supervisor, and that the latter laid them before the board of supervisors at their annual meeting in 1856, and that the board caused said highway tax to be levied and carried out in the assessment roll of that year.

The evidence upon these questions was, in substance, as follows: The person who was overseer of highways in 1856, testified that he had no recollection of posting the notice on the outer door of the building where the last preceding town meeting was held, which was the house of said Robert Galliland; that he was overseer three or four years; he recollected one year of posting it on the door of the town hall; evidence was given that thorough searches were made in the town clerk's office, and in the office of the clerk of the board of

supervisors, for notices and proof of posting or other papers in regard to the highway tax for that year, and that all that could be found was a copy of a road warrant for district number six, in which was lot fifty-four. The then owner of the lot testified that he was often in the town, and at the house of Galliland; that he frequently looked for notices of highway taxes, but did not see any; never heard of there being any posted but one year, and that year he paid the tax. The certificates of the county treasurer to the collector's accounts each stated that he had "examined and compared such account with the entries of the same taxes in the original assessment roll of said town for said year, and found the same to be a true transcript from such roll." The proofs of publication of the notices of sale required by the statute (§ 34, chap. 427, Laws of 1855), stated that they were published regularly once in each week for ten successive weeks; some giving the time when the publication commenced and when it terminated; some stating that it was previous to a specified date. The proofs showed that the publications ended from three to seven weeks prior to the sale.

*D. H. Bolles* for the appellant. The act of the comptroller was the exercise of mere naked authority, and no presumption of validity attaches to it or the elemental preliminaries leading to it. (*Jackson* v. *Shepard*, 7 Cow., 88; *Bunner* v. *Eastman*, 50 Barb., 639; *Varick* v. *Tallman*, 2 id., 113; *Striker* v. *Kelley*, 2 Den., 323; *Sharp* v. *Spier*, 4 Hill, 76; *Sharp* v. *Johnson*, id., 92; *Beekman* v. *Brigham*, 1 Seld., 366.) Every preliminary to the exercise of such a power must be strictly complied with, even where the language is simply directory. (*Rea* v. *Eachron*, 13 Wend., 456; *Ford* v. *Walsworth*, 15 id., 450; *Jackson* v. *Ely*, 7 id., 148; *Bloom* v. *Burdick*, 1 Hill, 141; *Jackson* v. *Shepard*, 7 Cow., 88; *Atkins* v. *Kinan*, 20 Wend., 240; *Bunner* v. *Eastman*, 50 Barb., 639; *Varick* v. *Tallman*, 2 id., 113; *Striker* v. *Kelley*, 2 Den., 323; *Sharp* v. *Spier*, 4 Hill, 76; *Sharp* v. *Johnson*, id., 92.; *Adriance* v. *McCafferty*, 2 Robt., 153; *Tallman* v.

*White*, 2 Com., 66; *Smith* v. *Randall*, 3 Hill, 495; *Van Rensselaer* v. *Whitbeck*, 3 Seld., 517; *Cruger* v. *Dougherty*, 1 Lans., 464; 43 N. Y., 107; *Hopkins* v. *Mason*, 61 Barb., 469; *In re pet. Ford*, 6 Lans., 92; *Curtin* v. *Follett*, 15 Barb., 337; *Westfall* v. *Preston*, 49 N. Y., 549; *Westbrook* v. *Wiley*, 47 id., 457; *In re Douglass*, 46 id., 42; *Doughty* v. *Hope*, 3 Den., 594; *Nat. Bk. Chemung* v. *Elmira*, 53 N. Y., 49.) The presumption of validity with which the laws clothe the comptroller's deed is not only not to be extended to any act not comprehended by the statutes creating the presumption, but when the facts tend to show a non-compliance with statutory requirements, the presumption is shifted and the burden transferred to the party asserting the comptroller's act. (*Striker* v. *Kelley*, 2 Den., 323; *Beekman* v. *Bigham*, 1 Seld., 366; *Newell* v. *Wheeler*, 48 N. Y., 486; *Tallman* v. *White*, 2 Com., 66; *Graves* v. *Brown*, 11 Ill., 431; *Sibley* v. *Smith*, 2 Mich., 486; Blackwell on Tax Titles, 365; *Johnson* v. *Elwood*, 53 N. Y., 431.) If land is sold for an arrearage of the taxes of several years, and the tax for any one year is void, the entire sale is void. (Laws 1855, chap. 427, §§ 33, 34, 44, 45, 50; Blackwell on Tax Titles, 280; *Moulton* v. *Blaisdell*, 34 Me., 283; *Hayden* v. *Foster*, 13 Pick., 492; *Wallingford* v. *Fiske*, 24 Me., 386; *Elworth* v. *Shaw*, 1 Greenl., 335; *Torrey* v. *Milbury*, 21 Pick., 70; *Alvord* v. *Collin*, 20 id., 418; *Bangs* v. *Shaw*, 1 Mass., 188; *Drew* v. *Davis*, 10 Vt., 506; *Thurston* v. *Little*, 3 Mass., 429; *Dillingham* v. *Snow*, 5 id., 547; *Stetson* v. *Kemper*, 13 id., 283; *Libby* v. *Burnham*, 15 id., 144; *Dow* v. *McQuilkin*, 8 Black, 355, 581; *Kemper* v. *McClelland*, 19 Ohio, 324; *Lacey* v. *Davis*, 4 Mich., 140; *Hardenburg* v. *Kidd*, 10 Cal., 402; *Ritter* v. *Worth*, 1 N. Y. S. C., 406; *Huse* v. *Merriam*, 2 Greene, 375.) The highway tax carried out on the roll of 1856 was void. (1 Greenl. Ev., §§ 20, 40, 78; *Hall* v. *Kellogg*, 16 Mich., 135; *Johnson* v. *Elwood*, 53 N. Y., 431; Laws 1855, chap. 427, § 65; 1 R. S., 506, § 22; 509, §§ 33, 34; 511, §§ 47–50.) The comptroller's sale was void in respect to the general tax carried out in the non-resident

part of the roll of 1856 (*Van Rensselaer* v. *Whitbeck*, 3 Seld., 517; *Bellinger* v. *Gray*, 51 N. Y., 610; *Johnson* v. *Elwood*, 53 id., 431; Laws 1845, chap. 180, § 32; R. S., §§ 1, 10, art. 1, tit. 3, chap. 13, pt. 1; id., § 2, tit. 6; § 30, art. 2, chap. 13; *Cook* v. *Stauts*, 18 Barb., 407; *Nat. Bk. Chemung* v. *Elmira*, 53 N. Y., 49.) The roll of 1858, as regards the non-resident tax on the lot in question, is void. (R. S., § 12, art. 2, tit. 2, chap. 13, pt. 1; *Hubbell* v. *Weldow*, H. & D. Sup., 139; *Tallman* v. *White*, 2 Com., 66; *Perkins* v. *Dibble*, 10 Ohio, 433; *Bellinger* v. *Gray*, 51 N. Y., 610; R. S., §§ 35, 36, art. 3, tit. 3. chap. 13, pt. 1.) As the return of the collector for 1856, 1858 and 1860 stated each tax at a sum in excess of the tax actually carried out, the comptroller's action was void. (Laws 1847, chap. 455, §§ 16, 29, 30; Laws 1855, chap. 427, § 4; *Case* v. *Dean*, 16 Mich., 12.) The certificates of the county treasurer transmitted to the comptroller did not comply with the statute. (Laws 1855, chap. 427, § 4; *Curtiss* v. *Follett*, 15 Barb., 337.) The preliminary notices, published under the direction of the comptroller, were not published, or proof of publication, made according to law. (*Nelson* v. *Pierce*, 6 N. H., 194; *Westbrook* v. *Wiley*, 47 N. Y., 457; *Bunner* v. *Eastman*, 50 Barb., 640.)

*H. E. Sickels* and *M. B. Champlain* for the respondents. None of the findings of fact of the trial court are reviewable here. (Laws 1855, chap. 427, § 65 ; *Tilson* v. *Terwilliger*, 56 N. Y., 273.) A substantial compliance with the statute providing for the imposition and collection of taxes, in all matters of substance, and designed to protect the tax-payer, is all that is necessary. (*Westfall* v. *Preston*, 49 N. Y., 349; *Parish* v. *Golden*, 35 id., 462; *Fellows* v. *Denniston*, 23 id., 420, 437; *B. and S. L. R. R. Co.* v. *Suprs. Erie Co.*, 48 id., 93; *Van Rensselaer* v. *Witbeck*, 7 Barb., 133; *Rooke* v. *Thomas*, 56 N. Y., 559, 564.) In case one assessor, in making the assessment roll, omits to perform his duties, the others are expressly authorized to perform them, and to make the affidavit to the roll. (1 R. S., § 31; Laws 1851, chap.

176, § 8; *Johnson* v. *Todd*, 56 N. Y., 76; 1 R. S., 419, § 2; *Parish* v. *Golden*, 35 N. Y., 462; *B. and S. L. R. R. Co.* v. *Suprs. Erie Co.*, 48 id., 93.) As to the highway tax, the roll was not defective in failing to designate the tract in which the land is situate. (1 R. S., 391, §§ 12, 13; *Dike* v. *Lewis*, 2 Barb., 344, 347; *Tallman* v. *White*, 2 Comst., 66, 70.) The objection that the non-resident part of the roll was copied by the town supervisor after the board of supervisors had adjourned, and the copy incorporated into the roll in place of the original, was not a good one. (1 R. S., 395, §§ 31–34; *Bellinger* v. *Gray*, 51 N. Y., 610.) The mistakes made by the collector in his returns for the years 1856, 1858 and 1860 were not of sufficient potency to vitiate these proceedings. (*Thorn* v. *Nott*, 1 N. Y. S. C. [Ad.], 22; *In re Lewis* v. *Mayor, etc.*, 35 How., 162, 168, 169; *Bergen* v. *Boeran*, 2 Cai., 257, 258; *Conger* v. *Tr. Bk.*, H. & D. Sup., 35; *Ex parte Becker*, 4 Hill, 613; *Colman* v. *Anderson*, 10 Mass., 105; *Wells* v. *Burbank*, 17 N. H., 393; *Prop. of Cardigan* v. *Page*, 6 id., 193; *Odiorne* v. *Mason*, 9 id., 80; *Spellman* v. *Curtenius*, 12 Ill., 409.) The sale was not void because the comptroller did not proceed to advertise and sell immediately after the expiration of the two years. The statute imposes the duty, but does not fix the time of sale. (Laws 1855, chap. 427, § 33; *Looney* v. *Hughes*, 26 N. Y., 514.) The old rule as to exceptions to rulings in equity cases is still in force. (*Vermilyea* v. *Palmer*, 52 N. Y., 471–477; *Forrest* v. *Forrest*, 25 id., 50; *People* v. *Gonzales*, 35 id., 60.)

MILLER, J. The action was brought to procure a decree declaring void a deed executed by the comptroller of the State to one Marsh on the 19th day of December, 1868, upon a sale of a lot of land for unpaid taxes, and to require the defendants, who claim title under said Marsh, to convey the premises to the plaintiff. Various objections are urged to the title of the defendants, all of which relate to the regularity of the proceedings by virtue of which the land was

sold for taxes, and conveyed by the comptroller. By law (S. L. of 1855, ch. 427, § 65), the comptroller's deed for land sold for taxes is made " presumptive evidence that the sale, and all proceedings prior thereto, from and including the assessment of the land," etc., were regular, and in accordance with the law. The party assailing them, therefore, is bound to establish, by sufficient and satisfactory legal evidence, the illegality or defect which vitiates and renders them nugatory and void. The objections urged must be considered, having in view the principle referred to.

In regard to the tax roll of 1856 of the town of Portville, it is insisted that it was void, because of a failure to comply with the statute in regard to the highway tax. The first objection is, that the notice to non-residents which is required by the statute (1 R. S., 509, § 34), to be posted by the overseers of highways was not affixed to the outer door of the building where the last preceding town meeting was held. The judge found that the said notice was affixed as the law requires, and I think that the finding was justified by the evidence.

The tax was laid seventeen years before the trial, and every presumption is in favor of the fact that the statutory provision was complied with, and that the officer performed his duty. The testimony of the overseer, to the effect that he does not remember whether or not he posted the notice in the year 1856, and the circumstances which he states as to his posting a notice one year at the town hall during the several years in which he filled the office, does not establish affirmatively that no such notice was posted. Nor is the fact made out by proof, that search had been made at the town clerk's office, and with the clerk of the board of supervisors, which failed to disclose any such notice for the year last named. Equally unreliable and uncertain is the testimony of the former owner of the premises, that during that year he inquired and looked for said notice, and failed to find it, or to learn that it had been posted. After so long a period of time had transpired, with changes of public officials having

charge of such papers, it is not remarkable that no notice could be found, and it would have been unsafe to rely upon either the want of recollection of the overseer, as to posting the notice, or the uncertain and indefinite evidence which failed to establish a neglect to do so. As the testimony stood, with no affirmative testimony to establish the alleged defect, the judge was not authorized to find that the officer had neglected his duty in this respect. Nor is there sufficient evidence to establish that no list of non-resident lands was made out by the overseer, delivered to the supervisor of the town, and by him laid before the board of supervisors, as the statute requires. (1 R. S., 5, 11, §§ 47–50.)

It is further insisted, that the comptroller's sale was void, in respect to the general tax carried out, in the non-resident part of the roll of 1856. It is said that this part of the roll is not verified by the assessors because the affidavit precedes the non-resident assessments, and merely verifies the "foregoing roll." The statute (S. L. of 1851, chap. 176, § 8) provides, that when the assessors, or a majority of them, shall have completed their roll, they shall appear before one of the justices of the peace, of the town or city in which they shall reside, subscribe an oath in the form therein stated, and in which they are required, among other things, to swear that they have "set down in the foregoing assessment roll, all the real estate situated in the town," thus including the lands of non-residents as well as others. It also provides, that "the oath shall be written on said roll," without designating the particular part of the roll in which it shall be thus written. It would seem to be sufficient, if it was anywhere upon the roll, unless it is apparent that it did not cover the entire list. There is no proof whatever, and no claim made, that the assessment roll as made out, signed and sworn to by the assessors, did not contain the lands of non-residents, and as the affidavit shows it covered all the real estate in the town, it was within the statute. Such is the legal presumption unless we assume that the assessors swore falsely, which is unwarranted by the facts presented. Without proof that

the non-resident names were added afterwards, it must be presumed, I think, that the verification was of the entire roll, and that the statute was literally and substantially complied with.

The roll is said to be defective, because it was made up and verified by two of the assessors, and does not contain a certificate stating the fact and the reason thereof.

The statute, in case of the neglect of any assessor, from any cause, to perform his duties, authorizes the other assessors to do so, and they are required to certify with the assessment roll the name of the delinquent, and the cause of the omission. (1 R. S., 394, § 30.) There is no doubt of the authority of the two to act where a third one neglects to do so. The form of the assessors' oath by statute, does not include any such certificate as is provided for by section 30, and the statute of 1851 (§ 8, *supra*), shows, I think, that the oath therein stated was all which the law required to make the roll complete and perfect for the purpose of assessing and collecting the tax. It was intended no doubt as a substitute for 1 Revised Statutes, 393, section 26, which provided the form of an official certificate for the assessors, and which was followed by section 29, which imposed a penalty upon an assessor for a willful refusal or neglect to perform his duty. The certificate, therefore, of the delinquency was not then necessarily a part of the assessment roll, but to be furnished "with their assessment roll." It was not a portion of the official oath of the assessors, but a separate and distinct statement, which the statute does not require shall be verified, or in any way form a part of the verification required by the act of 1851. It would be adding to the oath provided for, to insert therein a certificate of the delinquency of an assessor. But independent of the considerations suggested, it is apparent that the object of the legislature in enacting the provision cited, was to furnish evidence of the nature of the neglect or omission, so that if a proper case was made out, the delinquent could be brought to punishment. This is made manifest by subsequent provisions of the statute (1 R. S., 419, § 2), by which

boards of supervisors are required, at every annual meeting, to transmit to the comptroller of the State the names and places of abode of assessors, who have " willfully refused or neglected to perform the duties required of them." In *Bellinger* v. *Gray* (51 N. Y., 610), which is relied upon by the appellant's counsel, the question now raised was not decided, and the case was disposed of on another ground.

It is said that the affidavit was defective for want of a venue, and because it does not appear that the so-called justice, by whom the oath was administered, was a justice of the peace of the town. The paper signed by the assessors was not an affidavit but an oath, the form of which was prescribed by the statute. There is nothing in the statute which requires a venue; and if there was, as the oath was affixed, as the case shows, to the assessment roll of the town of Portville, it is to be assumed that the preliminary statement not only stated the town but the county in which the lands were located. As nothing to the contrary was proved, the legitimate inference is that it was made and subscribed before a justice of the peace of the town, in accordance with the provisions of the statute.

Objections are also urged to the roll of 1858, in regard to the non-resident tax upon the lot in question. First, it is said that it fails to designate the tract in which the land is situated. There is, I think, no ground for this objection. The Revised Statutes (vol. 1, § 12, p. —) declare that " if the land to be assessed be a tract which is subdivided into lots, or be *part of a tract* which is so subdivided, the assessors * * * shall designate it by its name, if known by one," etc. The intention of the statute was that the assessment should contain a true designation or description of the land, so that the purchasers at the sale might be able to find and locate the same, and that the owner might know that his land was advertised. (*Tallman* v. *White*, 2 Comst., 70.) The lot in question was a " part of a tract " which had been subdivided. It appears from the statute (Laws of 1837, chap. 268) that the town of Portville was a part of the territory of

the Holland land purchase, and it is recognized in the public statutes of the State that this tract is divided into townships and ranges, and then subdivided into lots, which are numbered. By giving the known name of the part which is divided into lots the spirit and intent of the statute is fully carried out. The designation of this lot as " number fifty-four, town one, range three, acres 150," is a statement of all that the law requires, and furnishes full information to all parties interested as to the lot intended to be assessed. In *Dike* v. *Lewis* (2 Barb., 347) CADY, P. J., says, that "the number of the lot is the only designation which, by law, is made necessary, as to lands not occupied." It appears that there were two townships of land in the Holland purchase, in Portville; and there could be no mistake, I think, as to what lot was intended. There is nothing in the cases cited by the appellant in conflict with these views. Second. It is further said as to the tax of 1858, that the entire non-resident part of the roll was not made by the assessors and the board of supervisors, but by the supervisor of the town. It appears, and is found by the court, that at a meeting of the board of supervisors the tax was levied and carried out, but after the board adjourned, the supervisor of the town took from the roll the leaves upon which the non-resident lands and taxes had been placed, and copies of the same made by him were incorporated into the roll in their place. By statute (1 R. S., 395, § 36) the board are required to cause the corrected assessment roll of the town, or a fair copy thereof, to be delivered to the collector. The testimony is not very clear as to the time when the copying was done, and the supervisor who was sworn is not very positive on the subject. It appears to have been done, because the leaves taken out had become defaced. It is a fair presumption that the assessment roll was delivered to the supervisor of the town to copy the whole, or such part thereof as might be necessary to make it legible; and because a portion only was copied instead of the whole, it does not vitiate the entire roll. The statute (§ 37) does not require the warrant to be

annexed by the board; and it was not a fatal defect because a part of the roll was copied. In *Bellinger* v. *Gray* (*supra*) the supervisor inserted the figures as to the corrected valuation, total amount of property and the amount of tax, after the roll had been fully completed and the board had finally adjourned; and that case is not in point.

The objection that the returns of the collector as to this land in the years 1856, 1858 and 1860, are in excess of the taxes carried out, is not, I think, well founded. By section 16, chapter 455 Laws of 1847, the collector is authorized to add five per cent to the sums returned by him, "which shall go to the credit of the county, and be collected with said unpaid taxes." This constitutes the alleged excess, and was properly added under the statute cited. A point is made that this provision does not apply to taxes on lands of non-residents, but after a careful examination, I see no reason why it is not applicable. It is broad enough to cover all taxes, and neither the act of 1845, which was amended by the act of 1847, nor the Revised Statutes, volume 1, 397, 398, sections 1, 2, 3 and 4, and page 399, section 10, are inconsistent with section 16 of the act of 1847.

These provisions may all be carried out in harmony, and there is no valid reason why an owner of non-resident land should be exempted from the payment of the five per cent. more than any other delinquent. The right to add the five per cent. is also recognized. (*Overing* v. *Foote*, 43 N. Y., 290.) Whether it is commingled with the tax itself, or made a separate item cannot affect its legality, so long as the amount does not exceed what the law authorizes.

It is further insisted that the sums added were, in two instances, in excess of the five per cent, in one instance three cents too much, and in the other four cents. This is a very trifling variance, and cannot affect the proceedings. The maxim applies "*De minimis non curat lex.*"

The certificates of the county treasurer, transmitted to the comptroller, are also objected to as not being in compliance with the statute. (S. L. of 1858, 781 and 782, § 4.) The

answer to this position is: 1st. That the statute does not require that the certificate to be made and signed, when the collector returns his account, should be transmitted to the comptroller, and for any thing that is proved, it may have been made. 2d. That the last named certificate comprehends substantially all the facts which the certificate first mentioned contains, and therefore is sufficient.

The objection that the notices published under the direction of the comptroller, preliminary to the sale, were not published, or the publication proved according to law, is not well taken. The statute (S. L. 1855 chap. 427, § 34), provides, that the notice shall be published "for the space of ten weeks prior to the commencement of the sale." It was not necessary that the proof should show when the publication commenced, or when it ended; and it was sufficient that it appeared that the notice had been published, prior to the sale, the number of weeks required by law. It is difficult to see how a statement of the time when the publication commenced, or when it ended, could add to the strength of the proof. Nor was proof required that it should be *next* prior to the sale. The statute does not demand this, and, practically, it would be essential that the comptroller should have some time before the sale, and after the proofs were received, to ascertain and make up a statement of the expenses of publication and other matters connected with the sale, which usually embraces a large number of lots located in different parts of the State. The cases cited by the appellant upon this point are not in conflict with this interpretation of the statute, and do not aid the plaintiff's case. (See *Westbrook* v. *Willey*, 47 N. Y., 457; *Bunner* v. *Eastman*, 50 Barb., 640.)

Nor does the act require (S. L. 1855, § 33, *supra*), that the comptroller should proceed to advertise and sell immediately after the expiration of two years. It does not say when he shall proceed, thus vesting in the comptroller a discretion as to the time when he shall perform the duty which is to be exercised, having in view the interests of the

public. No time is named within which the duty is to be performed, and hence it is to be determined by the officer. It would be contrary to the usual rule of construction in such cases to hold that such a statute was peremptory and positive in its requirements.

There was no error, and the judgment should be affirmed with costs.

All concur.

Judgment affirmed.