testimony of other witnesses in the case, it would seem that his memory is not reliable as to dates. In June, 1864, he told Mr. Furst and Mr. Bond that he had made the invention about three months before the application for his patent, which application, as we have already seen, was in the beginning of July. Now, it is clear that he is mistaken as to this, because the testimony of the construction and use of a machine as early as February or March, 1851, seems conclusive. It also appears that Marsh made an affidavit on the 24th of March, 1866, in Chicago, in which he says that in January or February, 1851, he conceived in his own mind a plan for a corn cultivator, but did not make a drawing or model of the same, or fully explain the same to any one until the month of May of the same year, which it is clear was long after he had actually caused his cultivator to be constructed, and, besides, there is a letter in evidence from Munn & Co., dated the 31st of December, 1850, which refers to one from Marsh of the 17th of the same month, making inquiry as to the steps necessary to be taken toward securing letters patent for an invention, which must have referred to this improved cultivator. So that there can be no doubt that Marsh was mistaken in the dates mentioned in his affidavit of the 24th of March, 1866, just mentioned.

These are the facts as set forth by the evidence on the part of the plaintiff and of the defendants, and what is the truth in relation to them?

And, first, as to the application in the patent office. That is a matter of record, and about the time there can be no doubt. The application of Dundas was in August, 1851. That of Marsh was in July of the same year. Then, Marsh was prior, in point of time, in the patent office.

Secondly, as to the construction and practical operation of the machine. It is not claimed, and the proof does not establish, on the part of the plaintiff, that Dundas brought a practical operating machine into being before, some time during the season of 1851, and when it was considerably advanced. The testimony of the son is, as we have seen, that the iron work was not completed until June, 1851, and it does not seem to have been operated until the summer of 1851. This fact depends mainly, if not exclusively, upon the testimony of Dundas and his son, and, of course, is liable to error.

When was the machine of Marsh finished? As to this, if there is any reliance to be placed upon testimony, there can be no doubt whatever Marsh went to Mississippi, or was there in December, 1850. That time is fixed beyond all controversy. He was teaching school, and his wife was teaching music, in January and February, 1851, he a short distance from Salem and she in Salem. Then there is the concurrent testimony of many witnesses as to the construction and operation of the machine, various witnesses testifying that it was operated "before vegetation was started," "before the corn was planted," "before there was anything green," so that there really can not be any doubt as to the construction and operation of the Marsh machine. Then Marsh brought into being a machine which operated successfully before that of Dundas. He is prior, therefore, in point of time in the construction and operation of the machine.

The only remaining question is, thirdly, as to the time of the conception of the two machines. Here all we have on the part of Dundas is the testimony of the father and of the son. About this, of course, there may be room for forgetfulness, mistake, or error. When a man conceived a certain machine, no one knows except the man himself; when he described it, no one knows except himself and the person to whom he describes it. We have to rely upon their testimony in order to determine. If it were clear, in view of the fact that the invention was followed up by the issuing of the patent to Dundas, that he was prior in point of conception, then, perhaps, he would be entitled to the monopoly which is claimed by the plaintiff in this case. But we have the same sort of evidence, and, as it seems to me, even stronger, as to the conception of the Marsh machine. There are more witnesses who testify to the priority of the conception on the part of Marsh than there are to that on the part of Dundas. I have referred to the various witnesses who state that Marsh communicated the conception of this machine, and that it was, in point of fact, prior to 1850. Mrs. Marsh distinctly says that it was before her marriage. Of course, you may say she does not tell the truth, but the date of her marriage is a thing about which she would not be very apt to be mistaken, and she could refer to any event in connection with that and speak of it with reasonable certainty. So as to Mr. Lawrence; the time when he came to the neighborhood in which Marsh resided. And so as to Mr. Bates. On the whole, I think the weight of the evidence is, in this case, that the conception and construction of the Marsh machine was prior in point of time to that of the Dundas machine. And, therefore, that Dundas was not the first and original inventor of the improvement in a cultivator which was patented to him.

The bill will consequently be dismissed.

[For another case involving this patent, see Marsh v. Sayles, Case No. 9,119.]

## Case No. 12,420a.

SAYLES v. LAKE SHORE & M. S. RY. CO.

SAME v. CHICAGO & N. W. RY. CO.

SAME v. CHICAGO, B. & Q. RY. CO.

Circuit Court, N. D. Illinois. Oct. Term, 1879.

[See 9 Fed. 515.]

SAYLES (MARSH v.). See Case No. 9,119.