July 31, 1979

## 79-56   MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### (1)   Federally Chartered Corporations—National Consumer Cooperative Bank—Board of Directors
### (2)   Recess Appointments

This responds to your memorandum concerning the National Consumer Cooperative Bank (the Bank). The Bank has been "created and chartered [as] a body corporate * * * as an instrumentality of the United States, and until otherwise provided, shall be a mixed ownership Government corporation." Act of August 20, 1978. § 101, 92 Stat. 499. I have been advised that it is important for budgetary reasons that the Bank be operational by early August. This would involve the convening of the Board of Directors by that time.

Under § 103(a) of the Act, 92 Stat. 502, the Board consists of 13 members who for the time being are to be appointed by the President by and with the advice and consent of the Senate. Seven members are to be appointed from the Senate. Seven members are to be appointed from among officers of agencies and departments of the Government of the United States, and six from the general public. The President has nominated 11 directors, 5 of whom are Government officials and 6 who represent the general public. It is likely that those directors will be confirmed prior to the August recess of the Senate. It is, however, possible that the remaining two Government officials will not be nominated until the end of July, too late to be confirmed prior to the recess.

The question is whether the initial meeting of the Board may be convened before all its members have been appointed. In my view, the Board can be so convened. The statutory language (§ 101) provides: "[t]here is hereby created and chartered a body corporate * * * ." Congress thus intended the corporation to come into existence immediately. Under the

common law rule a quorum consisting of a majority may act for a collective body in the absence of a statutory provision to the contrary.[1] Federal regulatory agencies frequently operate with vacancies in their membership as long as a quorum is present. Congress is fully aware of that practice, which has been approved by the Supreme Court,[2] and it did not indicate that a different rule should apply to the first meeting of the Bank's Board of Directors. We therefore are of the opinion that a Board meeting can be held if a quorum of at least seven directors is present, even if all of the statutory number of directors have not been appointed.

We are aware of the memorandum of the Deputy General Counsel of the Community Services Administration, which concludes that the Board cannot act before all of the 13 statutory members have been appointed. In our view, however, the authorities cited for that proposition are not applicable here.

These authorities are fairly old State cases relating to boards and commissions of a governmental nature. The Bank, however, although an instrumentality of the United States, would operate in the main like a private corporation. Two of the cases, *Williamsburg* v. *Lord*, 51 Me. 599 (1863), and *Colman* v. *Shattuck*, 62 N.Y. 348 (1875), as well as *Schenck* v. *Peay*, 21 F. Cas. 607 (C.C.E.D. Ark. 1868) (No. 12450), the only pertinent Federal case of which we are aware, deal with tax sales of real property where the courts traditionally are hypercritical. As Judge Miller stated in *Schenck*:

> Nothing is better settled in the law of the country than that proceedings in pais for the purpose of divesting one person of title to real estate, and conferring it on another, must be shown to have been in exact pursuance of the statute authorizing them, and that no presumption will be indulged in favor of their correctness. This principle has been more frequently applied to tax titles than to any other class of cases.

The other two cases cited in the memorandum, *People ex rel. Hoffman* v. *Hecht*, 105 Cal. 621 (1895), and *First National Bank* v. *Mt. Tabor*, 52 Vt. 87 (1879), in fact repudiate the ancient and technical common law rule on which the memorandum relies.

We have not been able to discover any recent applicable cases. In a closely related situation, namely, the increase in the number of the members of a board of directors of a corporation, it has been held that the quorum of the board is to be determined on the basis of the old board until the new members are actually elected, thus implying that a board is capable of transacting business before it has been brought up to its new membership. *Robertson* v. *Hartman*, 6 Cal. 2d 408, 57 P.2d 1310 (1936); *Rocket Mining Co.* v. *Gill*, 25 Utah 2d 434, 483 P.2d 897 (1971).

---

[1]*Federal Trade Commission* v. *Flotill Products*, 389 U.S. 179 183 (1967); 2 Fletcher, *Cyclopedia of the Law of Private Corporations*, §§ 419, 421; 4 McQuillan, *The Law of Municipal Corporations*, § 13.30.

[2]*See, Federal Trade Commission* v. *Flotill Products, supra.*

The final argument of the Deputy General Counsel is that the Presidential or Federal control envisaged by Congress would be lacking if the Board were composed only of five Government and six private members. Federal control, however, is assured by the provision in § 103(a), pursuant to which any member of the Board appointed by the President serves at the pleasure of the President. This argument also overlooks the fact that, even if all Federal members were appointed, the Board could still transact business with a quorum consisting of one Government member and six private members.

You have also asked whether recess appointments would be appropriate for the two Government members who are not likely to be confirmed prior to the recess of the Senate. The Attorneys General have ruled that the President can make recess appointments during a month-long summer recess of the Senate. 33 Op. Att'y Gen. 20 (1921); 41 Op. Att'y Gen. 463 (1960). There have been numerous instances of recess appointments before and after those opinions during intrasession recesses of the Senate of a month or similar duration. However, since *Kennedy* v. *Sampson*, 511 F.(2d) 430 (C.A.D.C. 1974), which held that the Pocket Veto Clause of Article I, Section 7, Clause 2, of the Constitution does not apply to intrasession adjournments, Presidents have been reluctant to make recess appointments during an intrasession adjournment of the Senate, although the *Kennedy* case does not directly apply to recess appointments under Article II, Section 2, Clause 3, of the Constitution. Nevertheless, it is our opinion that the President is constitutionally authorized to make recess appointments during the forthcoming recess. The question whether the two Government members of the Board should be given recess appointments therefore constitutes a policy decision. In the event that it should be decided to give recess appointments to the directors, it would be necessary, in view of 5 U.S.C. § 5503, to submit nominations to the Senate before it goes into recess. Otherwise, the recess appointees could not be paid unless subsequently confirmed.

We recommend against designations under the Vacancy Act (5 U.S.C. §§ 3345–3349) in view of the uncertainties of the application of those provisions to agencies and instrumentalities other than the departments listed in 5 U.S.C. §§ 101, 102, and of the 30-day clause of 5 U.S.C. § 3348.

As to a call for the first meeting of the Board of Directors, it appears sufficient if it is signed by two or more of the directors. Some take the position that the agenda attached to the notice may be brief, others suggest a more comprehensive notice. We suggest that the agenda be signed by the directors calling the meeting.

Under the Sunshine Act it would be necessary to make a public announcement of the meeting, including a notice in the *Federal Register*. 5 U.S.C. § 552b.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*